1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYNTHIA J., <br><br> Plaintiff, <br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 2:24-cv-00826-TL <br><br> ORDER REVERSING, IN PART, AND REMANDING THE COMMISSIONER'S FINAL DECISION |

    Plaintiff Cynthia J. seeks review of the denial of her application for Supplemental Security Income. This matter is before the Court on Plaintiff's Complaint for Judicial Review of Social Security Benefits. Dkt. No. 10. Plaintiff contends the Administrative Law Judge ("ALJ") erred by failing to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective statements, and by rejecting the medical opinion of Dennis Haack, M.D. Dkt. No. 10 at 1. As discussed below, the Court REVERSES IN PART the Commissioner's final decision and REMANDS the matter for further administrative proceedings under 42 U.S.C. § 405(g).

# I. BACKGROUND

Plaintiff is 54 years old (Dkt. No. 6[1] at 144 (Application Summary for Supplemental Security Income (Dec. 2, 2020))), has at least a high school education (*id.* at 187 (Form SSA-3368)), and has worked in retail and in non-profit organizations as a clothes sorter and holiday bell ringer (*id.*). On November 25, 2020, Plaintiff applied for supplemental security income, alleging disability as of May 5, 2016. *Id.* at 23 (Administrative Decision). Plaintiff's applications were denied initially and on reconsideration on August 27, 2021 and June 9, 2022, respectively. *Id.* After the ALJ conducted a telephonic hearing on June 27, 2023, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 23–24.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since November 25, 2020. Dkt. No. 6 at 25 (Administrative Decision).

**Step two:** Plaintiff has the following severe impairments: carpal tunnel syndrome ("CTS"); knee degenerative joint disease; chronic obstructive pulmonary disease ("COPD"); fibromyalgia; sleep apnea; obesity; and status post stroke (20 C.F.R. § 416.920(c)). Dkt. No. 6 at 25.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3] Dkt. No. 6 at 26.

**Residual Functional Capacity:** Plaintiff can perform light work except that she can never climb ladders, ropes, or scaffolds. *Id.* at 28.

**Step four:** Plaintiff cannot perform past relevant work. *Id.* at 30.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled. *Id.* at 31.

---

[1] Dkt. No. 6 is the Social Security Certified Administrative Record.

[2] *See* 20 C.F.R. §§ 404.1520, 416.920.

[3] *See* 20 C.F.R. § 404, subpt. P, app. 1.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. *Id.* at 5 (Notice of Appeals Council Action).[4]

## II. LEGAL STANDARD

### A. Standard of Review

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision was based on legal error or not supported by substantial evidence in the record. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *see also Havens v. Kijakazi*, No. 21-35022, 2022 WL 2115109, at *1 (9th Cir. June 13, 2022) (applying the standard and reversing ALJ's decision). The ALJ is responsible for evaluating evidence, in part by resolving conflicts in medical testimony and resolving any other ambiguities that might exist. *See Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *See id.* at 1154. The Court "must consider the entire record as a whole" and may not affirm the ALJ's decision "simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks omitted)). Finally, this Court "may not reverse an ALJ's decision on account of a harmless error." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1520c(c)(2)).

### B. The "Disabled" Determination

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[4] The rest of the procedural history is not relevant to the outcome of the case and is therefore omitted.

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Ford*, 950 F.3d at 1148 (citations omitted).

To determine whether a claimant is disabled under the definition provided in the Social Security Act (and, thus, eligible for benefits), an ALJ follows a five-step sequential evaluation pursuant to 20 C.F.R. § 404.1520(a): (1) the claimant must not be engaged in "substantial gainful activity"; (2) the claimant's impairment or combination of impairments must be severe enough to significantly limit the claimant's "physical or mental ability to do basic work activities"; (3) the claimant's impairment(s) must meet or equal the criteria of an impairment in the "Listing of Impairments" ("Listings"); (4) upon assessment of the claimant's residual functional capacity ("RFC"), the claimant must not be able to perform their "past relevant work"; and (5) the claimant must not be able to make an adjustment to other work. *See Ford*, 950 F.3d at 1148–49.

If the claimant fails to make the required showing at any of these steps, the ALJ's inquiry ends, and the claimant is found to not have a disability under the Social Security Act. The burden of proof is on the claimant at steps one through four, but at the fifth step, it shifts to the agency to prove that "the claimant can perform a significant number of other jobs in the national economy." *Id.* at 1149 (citation omitted).

### III.   DISCUSSION

**A.   Whether the ALJ Erred in Evaluating Plaintiff's Symptom Testimony**

Plaintiff first contends that the ALJ erred in evaluating her symptom testimony, specifically regarding her ability to walk unassisted, her emphysema, her knee condition, and her activities of daily living. Dkt. No. 10 at 2–4. These findings by the ALJ informed, and therefore affected, the determinations made at Steps 3 and 4 of the five-step sequential evaluation. *See* Dkt. No. 6 at 29–30 (Administrative Decision).

Where, as here, an ALJ determines that a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged (*see* Dkt. No. 6 at 29 ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . .")), and there is no evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity "by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). "The standard isn't whether our court is convinced but, instead, whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

### 1. Plaintiff's Ability to Walk Unassisted

At step 3, the ALJ found that Plaintiff did not meet listing 1.18 (abnormality of a major joint in any extremity) due to the lack of record of a medical need for a walker, and did not meet listing 11.14 (neuropathic condition causing disorganization of motor function) because "testing in the record showed unassisted walking and full strength." Dkt. No. 6 at 26–27 (Administrative Decision). Plaintiff contends that the ALJ's decision regarding her ability to walk unassisted misquotes the record by attributing the circumstances of Plaintiff's examination, which was performed without assistive devices, to Plaintiff's general ambulation. *See* Dkt. No. 10 at 2–3. Further, Plaintiff argues that the ALJ erred in associating Plaintiff's ability to perform one-time movements in the examination setting with her perceived ability to perform sustained movements or activities. *Id.*

At her hearing, Plaintiff testified that she could not walk "more than a block without being in pain." Dkt. No. 6 at 48 (Transcript of Oral Hearing). She testified further that she used a walker to ambulate (*id.*), and that she could only stand for approximately 20 minutes before needing to sit (*id.* at 44). The ALJ's decision states: "The claimant testified to a prescribed

walker that [s]he requires to ambulate, as [s]he struggles walking more than a block (hearing testimony)," but the ALJ rejected that testimony because "testing in the record showed unassisted walking and full strength (Exhibit 3F/5-6)." Dkt. No. 6 at 28 (Administrative Decision). As a result, the ALJ found at step 4 that Plaintiff has the RFC to perform light work with certain exclusions. *Id.*

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Jesse B. v. Acting Comm'r of Soc. Sec.*, No. C24-5419, 2025 WL 586301, at *4 (W.D. Wash. Feb. 24, 2025) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)). However, "an ALJ may not reject a claimant's subjective symptom testimony 'solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain,'" and "[t]reatment records may not be cherry-picked"—that is, "the ALJ must consider a particular record of treatment in light of the overall diagnostic record." *Id.* (first quoting *Bunnell v. Sullivan*, 946 F.2d 341, 345 (9th Cir. 1991), then quoting *Ghanim*, 763 F.3d at 1164). "An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills." *Id.* at *5 (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)).

The portion of the record cited by the ALJ when rejecting Plaintiff's subjective testimony indicates that Plaintiff "is unable to walk on heels, can walk on toes, notes knee pain with hopping, and is able to perform a tandem gait maneuver. . . . The gait shows her favoring the right knee, a slightly disjointed gait with normal pace and stride." Dkt. No. 6 at 459 (Exhibit No. 3F). The functional assessment portion of the cited record also indicates that Plaintiff can, at maximum, stand or walk for "[l]ess than two hours" due to her "[d]egenerative joint findings, right knee, knee effusion, incomplete extension of the knee joint, and altered gait." *Id.* at 461.

Further, the record indicates that as early as August 2022, Plaintiff had "difficulty walking and significant pain." Dkt. No. 6 at 651 (Exhibit No. 8F).

The record—and in particular, the portion of the record cited by the ALJ—does not contradict Plaintiff's subjective testimony. While the record states, and the ALJ acknowledged, that upon examination, Plaintiff "could not walk on her heels, but could walk on her toes, could walk unassisted, did not use an assistive device, had no difficulty sitting, could arise from seated to standing, could do a tandem gait, had full grip strength, and had full overall strength" (Dkt. No. 6 at 29 (Administrative Decision)), the ALJ's decision does not explain how Plaintiff's ability to perform those exercises in an examination setting contradicts her testimony regarding her ability to walk longer distances or her need to use a walker. Indeed, Dr. Haack's report does not indicate how far Plaintiff was required to walk for his examination—and the fact that Plaintiff was able to walk an unknown distance without an assistive device does not, without more, contradict her subjective testimony (and Dr. Haack's observation) that she generally needs a walker to ambulate and struggles to walk more than one block. Further, Dr. Haack's report does not, as Defendant argues, opine that Plaintiff's cane and knee brace are not necessary for "normal walking in everyday life." Dkt. No. 14 at 7. Rather, his report states that those assistive devices are "medically necessary . . . for long distances and all distances with uneven terrain." Dkt. No. 6 at 461 (Exhibit No. 3F).

The question now becomes whether the ALJ's error in cherry-picking a single task from an exam to justify rejecting Plaintiff's testimony regarding her ability to walk unassisted was harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). At the administrative hearing, the ALJ solicited the testimony of a vocational expert about the jobs available to an individual with Plaintiff's limitations, posing a hypothetical that did not include Plaintiff's testimony that she requires assistance to generally ambulate. *See generally* Dkt. No. 6

at 55–58 (Transcript of Oral Hearing). Not being informed of this limitation, the vocational expert did not have the opportunity to opine whether the characteristics of the jobs at issue would allow for such a limitation. "Any hypothetical posed to the vocational expert, for purposes of determining whether Plaintiff could perform other work, should have included all properly supported limitations because a 'vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record.'" *Trejo v. Comm'r of Soc. Sec.*, No. C22-192, 2023 WL 2752194, at *4 (E.D. Cal. Mar. 31, 2023) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)). Thus, because the Court cannot conclude that the ALJ's error in rejecting Plaintiff's testimony regarding her ability to walk unassisted was "inconsequential to the ultimate nondisability determination," it does not find the error to be harmless. *Stout*, 454 F.3d at 1055.

Accordingly, the Court finds that the ALJ has not offered clear and convincing reasons for rejecting Plaintiff's subjective testimony regarding her ability to walk unassisted, and the failure to do so constitutes harmful error.

### 2.     Plaintiff's Emphysema

Plaintiff next contends that the ALJ's decision fails to adequately address her testimony regarding her emphysema. Dkt. No. 10 at 3. Plaintiff argues that the ALJ's statement that "the record does not show hospitalizations for pulmonary conditions" is insufficient to evaluate Plaintiff's emphysema, "a disabling impairment limiting her endurance to complete an 8-hour workday" that is "layered on top of her COPD" and causes fatigue. *Id.*

But Plaintiff does not point to any specific testimony that she contends that the ALJ rejected, and the ALJ did address more than Plaintiff's lack of hospitalizations for her pulmonary conditions. For example, the Administrative Decision notes that "[p]ulmonary testing [in 2022]

showed mild to moderate COPD, with a good response to a bronchodilator" (Dkt. No. 6 at 29 (citing Dkt. No. 6 at 734 (Exhibit No. 9F))).

The record does indicate that Plaintiff's COPD had likely advanced to "stage II" in early 2023, as evidenced by "very expanded lungs." Dkt. No. 6 at 799 (Exhibit No. 11F). However, Plaintiff was not prescribed any course of treatment at that time, and her medical records indicate that her ambulation was not significantly impacted by her COPD. *Id.* at 797 ("Patient was able to ambulate approximately 770 feet in 6 minutes, she did not have any desaturations or hypoxic events. She was minimally dyspneic at the end of the study."). Further, Plaintiff testified that her inhaler controlled her symptoms for COPD and that she did not experience any other side effects. *Id.* at 46–47 (Transcript of Oral Hearing). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [social security disability] benefits." *Susan F. v. Comm'r of Soc. Sec.*, No. C22-5661, 2023 WL 4704160, at *3 (W.D. Wash. July 24, 2023) (quoting *Warre ex rel. E.T. IV v. Comm'r, SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006)).

Finally, Plaintiff did not appear to testify at her administrative hearing to any limited endurance she suffered due to either COPD or her emphysema. *See generally* Dkt. No. 6 at 37–63. Plaintiff argues that her pulmonary conditions "result in excessive fatigue, which . . . preclude[] the ability to sustain effort," but cites to no portion of the hearing or medical records supporting this argument, nor does she point to specific evidence that she claims the ALJ failed to consider. *See generally* Dkt. Nos. 10, 17. Because the evidence in the record is susceptible to more than one rational interpretation, "[the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Susan F.*, 2023 WL 4704160, at *4 (citing *Molina*, 674 F.3d at 1111). The ALJ's determination that Plaintiff's emphysema was not a

disabling condition because she was not hospitalized for any of her pulmonary conditions is a reasonable interpretation of the overall record.

Accordingly, the ALJ's decision as to Plaintiff's emphysema is supported by substantial evidence in the record.

### 3. Plaintiff's Knee Condition

Plaintiff also argues that the ALJ erred in basing her RFC "on an erroneous review of the medical record with respect to [Plaintiff's] knee condition." Dkt. No. 10 at 3. Plaintiff contends that the "ALJ erred in basing part of [her] decision on a finding that [Plaintiff's] knee pain could not be as severe as alleged based on [her] review of the evidence showing that [Plaintiff] never received steroid injection in the knee." *Id.* This is "factually inaccurate," Plaintiff argues, because Plaintiff did receive a steroid injection. *Id.* Further, Plaintiff argues that she need not prove the legitimacy of her pain by submitting to particular courses of treatment. *Id.*

At her hearing, Plaintiff testified that her knee condition limited her ability to ambulate, and that she could not walk "more than a block without being in pain." Dkt. No. 6 at 48 (Transcript of Oral Hearing). The ALJ determined that Plaintiff had "conservative treatment for her . . . knee impairments that did not include surgery or injections," and that her testimony regarding her knee condition was thus contradicted by her medical record. Dkt. No. 6 at 29 (Administrative Decision). The extent of the ALJ's evaluation of Plaintiff's knee condition appears to be that Plaintiff "only had a small fragment in the right knee," that in "June 2021 physical therapy for her right knee, [she] showed full range of motion, full strength, and a small effusion," and her aforementioned finding regarding Plaintiff's conservative treatment. *Id.*

However, Plaintiff's medical record indicates that she *did* receive a steroid injection to treat her right knee pain in June 2021, which undercuts the ALJ's finding that Plaintiff only received "conservative" treatment for her knee condition. Dkt. No. 6 at 628 (Exhibit No. 8F); *see*

*Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017) ("We have previously 'doubt[ed] that epidural steroid shots to the neck and lower back qualify as "conservative" medical treatment.'" (quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014))). The ALJ's statement that Plaintiff did not receive injections to her knee, and the subsequent finding that Plaintiff's treatment was "conservative," constitutes a clear error in the ALJ's decision. However, "[a]n ALJ's error may be deemed harmless if, in light of the other reasons supporting the overall finding, it can be concluded that the error did not 'affect[] the ALJ's conclusion.'" *Fox v. Colvin*, No. C16-1328, 2017 WL 5495155, at *6 (C.D. Cal. Nov. 15, 2017) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)); *see also Stout*, 454 F.3d at 1054–55.

In January 2021, Plaintiff was diagnosed with "acute pain of right knee" and "pain with most movements" due to a "small fragment in the knee" causing swelling. Dkt. No. 6 at 305, 308 (Exhibit No. 1F). At that time, Plaintiff's diagnosing physician noted that the "soft tissue swelling [in Plaintiff's knee] may be chronic," but that Plaintiff declined to take prednisone due to the side effects. *Id.* at 307. Plaintiff was referred to a sports medicine physician, who diagnosed Plaintiff with "knee osteoarthritis, degenerative meniscal tear, decreased knee [range of motion ("ROM")], pain and antalgic gait." *Id.* at 315. Approximately five months later, Plaintiff's sports medicine physician noted that she continued to experience knee pain and decreased knee ROM. *Id.* at 476 (Exhibit No. 6F). The physician stated that the June 2021 steroid injection had been helpful to Plaintiff for several months, that Plaintiff did "some home exercises but did not go to [physical therapy]," and that Plaintiff's pain was worse with stairs and "deep to patella and also medially." *Id.* at 478.

At an unrelated appointment for hand and wrist pain later that same year, Plaintiff's physician noted that Plaintiff continued to use a knee brace. *Id.* at 492. Plaintiff's medical records indicate that she continued to experience knee pain in November 2021. *Id.* at 503.

However, at the Administrative Hearing, Plaintiff testified that her "knee got better" after physical therapy, though she did not testify as to the specific timing of the improvement of her knee pain or the degree of improvement. Dkt. No. 6 at 47 (Transcript of Oral Hearing).

Given that Plaintiff's own reports of improvement in her knee pain undermine her testimony, and that Plaintiff's medical records support a finding that Plaintiff's knee pain improved with steroid injection treatment and physical therapy, the ALJ could reasonably reject Plaintiff's testimony regarding her knee pain based on its inconsistency with the record. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding it not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

Accordingly, while the Court certainly does not condone the ALJ's error with regard to the finding that Plaintiff received conservative treatment for her knee condition, the ALJ's decision as to Plaintiff's knee condition is supported by substantial evidence in the record as outlined above.

### 4. Plaintiff's Activities of Daily Living

Plaintiff also argues that the ALJ erred by determining that Plaintiff's activities of daily living were inconsistent with her allegations. Dkt. No. 10 at 4. Plaintiff contends that her "activities of daily living are very limited, and the ALJ fails to demonstrate that any of Plaintiff's activities are completed at an intensity or duration which would be inconsistent with the Plaintiff's allegations." *Id.* at 5.

The ALJ's decision states that Plaintiff's ability to "perform activities of daily living, as the claimant reported she does yard work, cooking, laundry, cleaning, shopping, and all self-care tasks" is inconsistent with Plaintiff's testimony regarding her medically determinable

impairments. Dkt. No. 6 at 29 (Administrative Decision). At her hearing, Plaintiff testified that she was able to perform a variety of household tasks, but was limited in her ability to do so by her need to take breaks to sit every five to 10 minutes. Dkt. No. 6 at 51 (Transcript of Oral Hearing).

Daily activities may be grounds for an adverse ruling "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.3d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a)). To discount Plaintiff's subjective testimony regarding her physical limitations on the grounds that her daily activities contradict such testimony, the ALJ "must make 'specific findings relating to the daily activities' and their transferability." *Id.* (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

Defendant argues that "even if Plaintiff's activities were not consistent with full-time work, the salient point is that they were inconsistent with the severity of the symptoms [s]he alleged." Dkt. No. 14 at 8. But the ALJ must make specific findings regarding these inconsistencies—and it is not clear from Plaintiff's testimony how her daily activities, including her limitations in performing them, are inconsistent with the severity of symptoms she testified she experienced. The ALJ has not made the required findings with specificity here.

**5.     Additional Arguments**

Plaintiff additionally argues that the ALJ erred in finding that Plaintiff's limited work history prior to the onset date of her disability shows that factors other than severe impairments may have prevented Plaintiff from working. Dkt. No. 10 at 2. But an ALJ may consider a claimant's lack of or limited work history when assessing subjective complaints. *See Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002). While the ALJ did not discuss in the

Administrative Decision that Plaintiff specifically testified that her limited work history is because she was a "stay at home mom" (*see* Dkt. No. 6 at 43 (Transcript of Oral Hearing)), it was not error for the ALJ to consider Plaintiff's work history when evaluating her subjective testimony regarding her impairments.

* * *

Accordingly, the Court FINDS that the ALJ committed harmful error by rejecting Plaintiff's subjective testimony regarding some of her impairments. In particular, the ALJ erred in finding that Plaintiff's medical record, and the one, isolated test from her examination with Dr. Haack specifically, contradicted her testimony that she struggled to walk more than one block and needed to use mobility devices when walking. Further, the ALJ failed to make specific findings regarding any inconsistencies between Plaintiff's performance of daily tasks and her subjective testimony regarding her impairments.

**B.    Whether the ALJ Erred in Rejecting the Medical Opinion of Dennis Haack, M.D.**

Plaintiff also contends that the ALJ erred in rejecting the medical opinion of Dr. Dennis Haack. Dkt. No. 10 at 5.

**1.    Consideration of Expert Medical Opinions**

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "[T]here is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (alterations in original) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (2017)). "'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Id.* (quoting 20 C.F.R. § 404.1520c(a)).

1  "Supportability means the extent to which a medical source supports the medical opinion by

2  explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791–92 (quoting 20 C.F.R.

3  § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . .

4  with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792

5  (quoting 20 C.F.R § 404.1520c(c)(2)).

6  With regard to the medical source's relationship with the claimant, "an ALJ can . . .

7  consider the length and purpose of the treatment relationship, the frequency of examinations, the

8  kinds and extent of examinations that the medical source has performed or ordered from

9  specialists, and whether the medical source has examined the claimant or merely reviewed the

10  claimant's records," but does not need to make specific findings regarding these factors. *Id.*

11  (citing 20 C.F.R § 404.1520c(c)(3)(i)–(v), (b)(2)). While an ALJ is not required to provide

12  "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, it

13  "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without

14  providing an explanation supported by substantial evidence." *Id.* "The agency must 'articulate . .

15  . how persuasive' it finds 'all of the medical opinions' from each doctor or source . . . and

16  'explain how it considered the supportability and consistency factors' in reaching these

17  findings." *Id.* (quoting 20 C.F.R. § 404.1520c(b)) (cleaned up).

18  **2.    The ALJ's Consideration of Dr. Haack's Opinion**

19  The ALJ's decision stated:

20  > Dr. Dennis Haack M.D. found the claimant could stand or walk
> less than two hours, has no limitations sitting, uses a cane and knee
21  > sleeve that is necessary for long distances, can lift up to 10 pounds,
> can occasionally balance and stoop, can never perform other
22  > postural activities, and needs to change positions frequently
> (Exhibit 3F). This opinion is not persuasive, as it is not supported
23  > by his own examination that showed full strength and unassisted
> walking (Exhibit 3F/3-7). This opinion is inconsistent with the
24  > claimant had [sic] conservative treatment for her CTS and knee

> impairments that did not include surgery or injections (See Exhibit 1F-13F). This opinion is inconsistent with new evidence in the record shows [sic] the claimant recovered well from her stroke (Exhibit 8F/5-30).

Dkt. No. 6 at 30 (Administrative Decision). But the ALJ's description of Dr. Haack's examination as showing "full strength and unassisted walking" understates the findings of that exam. In Dr. Haack's report, he states that upon examination:

> The claimant is unable to walk on heels, can walk on toes, notes knee pain with hopping, and is able to perform a tandem gait maneuver. No assistive devices are used during this portion of the exam. The gait shows her favoring the right knee, a slightly disjointed gait with normal pace and stride. [T]he claimant does not attempt a squat maneuver secondary to knee pain, and is able to bend forward at the waist to 70 degrees.

Dkt. No. 6 at 459 (Exhibit No. 3F). The ALJ relied on a single sentence to conclude that Plaintiff "showed full strength and unassisted walking" (Dkt. No. 6 at 30 (Administrative Decision)) which merely noted that no assistive devices were used "*during this portion of the exam*" that involved four discrete tasks. *Id.* at 459 (emphasis added) (Exhibit No. 3F). Additionally, Dr. Haack's report indicates that upon Plaintiff's performance of a "straight leg raise test," he found that she had "joint deformity," including "degenerative changes in joint margins of the right knee . . . with approximately a fusion of about 10 degrees about the right knee." *Id.* These observations support Dr. Haack's findings that Plaintiff "could stand or walk less than two hours, has no limitations sitting, uses a cane and knee sleeve that is necessary for long distances, can lift up to 10 pounds, can occasionally balance and stoop, can never perform other postural activities, and needs to change positions frequently," (*id.* at 461) and are not addressed by the ALJ in the Administrative Decision.

      The ALJ's determination that Dr. Haack's conclusion is inconsistent with his own examination of Plaintiff is not supported by substantial evidence, as discussed above. *See supra*

Section III.A.1. And the ALJ's determination that Dr. Haack's conclusion is inconsistent with Plaintiff's "conservative treatment" for her knee impairments omits that Plaintiff did receive a steroid injection for her knee issues. *See supra* Section III.A.3.

Accordingly, the ALJ's explanation for her rejection of the medical opinion of Dr. Haack is not supported by substantial evidence.

### IV.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED IN PART, and this case is REMANDED for further administrative proceedings consistent with this decision under 42 U.S.C. § 405(g).

Dated this 14th day of March 2025.

Tana Lin
United States District Judge